# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

THE SUFFOLK FERTILIZER COMPANY, INC. V. LEGH R.
POWELL, ET AL.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning,
JJ.

The opinion states the case.

*Thomas L. Woodward,* for the plaintiff in error.

*James H. Corbitt,* for the defendants in error.

CAMPBELL, C. J., delivered the opinion of the court.

This case is here on a writ of error awarded to a judgment of the Circuit Court of the city of Suffolk, rendered in an action by notice of motion brought by the receivers of the Seaboard Air Line Railway Company against the Suffolk Fertilizer Company, incorporated.

Plaintiffs' notice of motion contains two counts. The first count relates to the execution of a check by the defendant to the plaintiffs, in the sum of $540, which was accepted in payment of demurrage charges. The second count is based upon an open account in the sum of $161 for alleged demurrage charges against the defendant. (Upon the trial it was admitted that the correct amount alleged to be due was $146 instead of $161.)

The demurrer filed to the notice of motion was overruled. The grounds of defense, in substance, are: There was no legal or valuable consideration for the check; the demurrage charges for which the check was given were illegal; the plaintiffs failed to notify defendant in writing of the ar-

rival of the cars, as required by law; plaintiffs did not allow the "free time" to which defendant was entitled; plaintiff failed to comply with the rules and regulations of the Interstate Commerce Commission and the State Corporation Commission as a condition precedent to the right to charge demurrage.

There was a trial by a jury which resulted in a verdict for the plaintiffs in the sum of $687.44, and over the objection of defendant the court entered judgment thereon:

The evidence is conflicting but the facts as found by the jury and approved by the trial court may be thus summarized:

The plaintiff is a public service corporation amenable to the rules and regulations of the Interstate Commerce Commission and the State Corporation Commission. The defendant is engaged in the fertilizer business, with its plant located in the city of Suffolk. Defendant, for a period of years, in the usual course of business, had received freight from the plaintiff, the same being shipped in carload lots, with a credit arrangement existing between the parties. Sometime between December 3, 1931, and February 20, 1932, nine cars of freight, billed to the defendant, were received by plaintiff and delivered according to the credit arrangement then prevailing, without the prepayment of demurrage charges. On April 6, 1932, five other cars containing fertilizer material marked for defendant arrived in Suffolk, subject to an order notify bill of lading. When the bill of lading was presented by the defendant, on May 6, 1932, and delivery of the cars requested, plaintiffs refused to extend further credit and refused to surrender the five cars until the freight and all demurrage charges were paid. Thereupon, in order to obtain the five cars, W. B. Jones, secretary and treasurer of the defendant, gave the plaintiffs two checks, one for $122 in payment of the freight, and another for the sum of $540 in payment of demurrage charges, and thereupon a receipted bill was given defendant, the lien on the goods being thereby released, and the five cars were delivered to defendant. After the removal

of the fertilizer material, defendant, through its secretary and treasurer, stopped payment on the check. When W. B. Jones, examined as a witness, was asked if it was not his intention to stop payment on the check after a delivery of the five cars, his reply was: "When I issued the check, it was my express intention to stop payment on the check."

At the conclusion of the evidence the court gave to the jury the following instructions:

■ "The court instructs the jury that, if they believe from the evidence that the defendant, the Suffolk Fertilizer Company, Incorporated, by W. B. Jones, its agent, gave to the plaintiffs, or to their agent, the check for $540 introduced as evidence, in order to obtain from the plaintiffs cars loaded with merchandise, and that, after receiving the said cars, the said defendant stopped payment upon the said check, and that $1.44 protest fees accrued thereon, the plaintiffs are entitled, on account of said check, and protest charges, to recover from the defendant the sum of $541.44, with interest thereon from May 11, 1932."

"The court instructs the jury that, if they believe from the evidence that on the nine cars shown in evidence to have arrived between December 3, 1931, and February 20, 1932, inclusive, received by the defendant from the plaintiffs, notice of arrivals were given by mail, as testified to by O. H. Bland, and that notice by mail is the usual and customary way of giving the notice, and that the bills of lading were not surrendered and the said cars were not released until the dates also shown by witness Bland, the plaintiffs are entitled to recover from the defendant, as demurrage on these cars, the sum of $146, with interest thereon from the 29th day of February, 1932, until payment."

■ "The court instructs the jury that as a condition precedent to the right to charge demurrage by a carrier, notice of arrival must be sent or given the consignee by the carrier's agent in writing, or in lieu thereof, as otherwise agreed to in writing by the carrier and consignee, after arrival of car and billing at destination, such notice to contain car initials and number, point of shipping and contents,

and if you believe that plaintiff failed to comply with this regulation, that it has no right to charge demurrage, then you should find for the defendant."

The instructions given for the plaintiffs were excepted to and the action of the court in thus instructing the jury is made the basis for an assignment of error.

The case made by the plaintiffs warranted the giving of the instructions and in that respect no error was committed by the trial court.

In the petition for a writ of error the decisive question is stated thus: "The question presented is, whether a shipper (or assignee accepting freight) in giving the carrier a check to obtain delivery of cars it considers held for illegal demurrage charges, intending at the time to, and thereafter does, stop payment on the check, thereby estops itself, in an action on the check, to question the validity of the demurrage charges."

Counsel have submitted elaborate briefs dealing with rebates and discriminations; with what constitutes legal demurrage charges and "free time;" what constitutes notice of arrival of freight; whether or not the check in issue should be treated as cash; whether or not there was a failure of consideration.

In our view of the case, it is not necessary to deal with these questions. The answer of the trial court to the question propounded is contained in this concrete statement: "When a man settles an account in order to get goods by giving a check, he cannot be heard afterwards to repudiate it unless he can show that there was some fraud practiced on him that he did not know about at the time, or some fact material to the settlement of the affair that was kept secret from him. If he knew at the time he was giving this check that he was settling for this account before him, and was giving it in order to get the goods, then he cannot be heard afterwards to say that he ought not to have paid it. That is common justice."

In that view we fully concur.

The judgment of the trial court will be affirmed without prejudice to any rights the defendant is entitled in law to assert.

*Affirmed.*

HUDGINS and GREGORY, JJ., dissenting.